**26**
Stephen M. Reynolds CSB 148902
**Reynolds Law Corporation**
424 Second Street, Ste. A
Davis, CA 95616
530 297 5030 telephone
530 297 5077 fax
sreynolds@lr-law.net email

*Attorneys for Debtor Victoria Gewalt*

## UNITED STATES BANKRUPTCY COURT

## FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re:<br><br>Victoria M. Gewalt,<br><br>    Debtor. | Case No. 21-20600<br><br>Chapter 11<br><br>Judge Christopher M. Klein |

### DEBTOR VICTORIA M. GEWALT'S PLAN OF REORGANIZATION UNDER CHAPTER 11 SUBCHAPTER V OF THE BANKRUPTCY CODE DATED MARCH 30, 2021

Victoria M. Gewalt, the "**Debtor**" as the debtor and debtor in possession in the above-captioned chapter 11 case, by and through its counsel, hereby proposes its Plan of Reorganization (the "**Plan**") under Chapter 11 of the United States Code (the "**Bankruptcy Code**").

### ARTICLE I
### SUMMARY

The Debtor has secured debt as well as unsecured debt. She has been involved in real estate development, investment and management for more than thirty years. She is currently 82 years old and widowed. The present case was filed on February 19, 2021. Debtor owns a number of investment properties in Texas, Louisiana and California. Some of these properties are currently listed for sale and Debtor contemplates selling others to pay claims in full. Her residence is in

Loomis, California and is property of the bankruptcy estate. Some of the secured loans are cross collateralized by other properties. She also owns several Limited Liability Companies, some are inactive, another is used to manage two rental properties in Franklin, Texas, another currently generates approximately $6,500 per month in petroleum lease revenues. She is also the co-owner of several properties that she and her late husband owned with her late husband's brother, John Gewalt. Historically John Gewalt has been extremely litigious. Debtor's large unsecured claim owed to the Weintraub Tobin law firm is the result of litigation with John Gewalt. Debtor was forced to litigate the validity of a settlement agreement entered into with John Gewalt all the way to the California Supreme Court. The proposed plan calls for the prompt liquidation of Debtor's rental properties in California and Texas and the payment of all secured and unsecured claims. It may be necessary to refinance Debtor's residence with a reverse mortgage to meet Debtor's primary goals of paying her creditors and remaining in her Loomis residence.

The treatment of Claims and Equity Interests in each class is summarized as follows:

| Class | Type of Allowed Claim or Equity Interest | Impairment/Voting (see explanation below of Voting in a Subchapter V case) | Recovery/ Treatment |
|---|---|---|---|
| 1 | **Secured Creditor:** First Guaranty Bank. Secured by 801 Wheelock, Franklin, Texas | Entitled to Vote | • Sell property securing claim within two years of plan effective date and pay in full.<br>• Maintain monthly contractual payments from rents.<br>• Retains security interest |
| 2¹ | **Secured Creditor:** Gulamali Faizullah. Secured by 2nd DOT on 490 Club Drive, Tahoe City, CA | Impaired Entitled to Vote | • Paid in full from sale of 490 Club Drive, Tahoe City, California within two |

---

¹ Sale of 490 Club Drive has closed and the 2nd DOT secured by that Property has been paid.

| | | | |
|---|---|---|---|
| | | and 807 Wheelock, Franklin, Texas | years of Plan effective date. |
| 3 | **Secured Creditor:** Gulamali Faizullah Secured by 2nd DOT on 807 Wheelock, Franklin, Texas | Impaired Entitled to Vote | • Paid in full from sale of 807 Wheelock, Franklin, Texas |
| 4 | **Secured Creditor:** Mechanics Bank, N.A. Secured by 1st DOT on residence, 9649 Sterling Pointe Court, Loomis, CA | Impaired Entitled to Vote | Paid in full from sale of investment properties and potential refinance within two years of Plan effective date. |
| 52 | **Secured Creditor:** Superior Loan Servicing Secured by 1st DOT on 490 Club Drive, Tahoe City, CA. | Unimpaired Paid prior to confirmation. | • Paid in full from sale of 490 Club Drive, Tahoe City, California. |
| 6 | **Secured Creditor:** Safy Khalifa.  Secured by 2nd DOT on residence, 9649 Sterling Pointe Court, Loomis, CA | Unimpaired Paid prior to confirmation | • Paid in full from sale of 490 Club Drive, Tahoe City, California.. |
| 7 | **Secured Creditor:** Santander Consumer USA | Unimpaired Not entitled to Vote | • Debtor shall remain current on all payments. • Paid according to contract terms. |
| 8 | **All General Unsecured Claims** | Impaired Entitled to Vote | • Paid in full from sale proceeds of investment properties after payment of secured claims and Priority Claims. |
| 9 | **Debtor** | Plan Proponent, deemed to accept the Plan. | • Property of the estate will revest in the Debtor upon plan confirmation. |

**All creditors and equity security holders should refer to Articles III through VI of this Plan for information regarding their precise treatment.**  Creditors should be aware that the current Chapter 11 case is a Subchapter V Chapter 11 case.  Bankruptcy Code Section 1191

---

2 Sale of 490 Club Drive has closed, this claim has been paid in full.

provides that the court shall confirm a plan if all of the applicable requirement of Bankruptcy Code Section 1129(a) are met other than paragraphs (8), (10), and (15) so long as if the plan does not discriminate unfairly, and is fair and equitable, with respect to each class of claims or interest that is impaired under, and has not accepted, the plan. Accordingly, a ballot shall be transmitted to every impaired creditor.

**YOUR RIGHTS MAY BE AFFECTED. YOU SHOULD READ THESE PAPERS CAREFULLY AND DISCUSS THEM WITH YOUR ATTORNEY, IF YOU HAVE ONE. IF YOU DO NOT HAVE AN ATTORNEY, YOU MAY WISH TO CONSULT ONE.**

**ARTICLE II**
**HISTORY OF THE DEBTOR**

Section 1.01    **Filing of the Debtor's Chapter 11 Cases**

Debtor filed a voluntary Chapter 11 case under Subchapter V of the Bankruptcy Code on February 22, 2021. Walter Dahl has been appointed as Subchapter V Trustee. Debtor intends to continue operating certain rental properties; 801 and 807 Wheelock through Crossroads at Cedarwood, LLC. The sale of 490 Club Drive, Tahoe City, California was approved by this Court's Order entered March 24, 2021 (Docket Control No. 45). A Realtor has been employed to market the two Franklin, Texas properties, her employment was authorized by order entered March 15, 2021 (Docket Control No. 41). An application to employ a realtor for the Bryan Texas property is imminent.

1.02 **Nature of the Debtor's Business**

Debtor has owned and managed investment real estate for decades. She intends to use this Plan to liquidate her investment holdings in order to pay her creditors in full. She intends to retain her residence and reduce the claim of the creditors secured by that property as the investment properties are sold.

Section 1.02    **Events Leading to Chapter 11 Case**

Debtor and her late husband were involved in real estate development, acquisition and sales for approximately thirty years. Debtor has experienced serious reverses in her real estate

investments since 2008. She has sold properties over the last few years and borrowed against remaining properties at increasingly disadvantageous terms in an effort to retain properties. The immediate cause of the present case was a Trustee's Sale of her residence that was continued to February 24, 2021.

### Section 1.03    Legal Structure and Ownership

The Debtor is an individual. Certain of her properties are owned by the Gewalt Revocable Trust dated November 6, 1989 and restated September 11, 1989. She is the sole surviving trustee. For purposes of this Plan properties titled in the name of the trust will be treated as her property.

### Section 1.04    Debtor's Assets

Attached as Appendix 1 hereto is the List of Debtor's Assets and Liabilities including a Liquidation Analysis, which contains a detailed breakdown of the Debtor's assets as well as the likely distribution in the event of a liquidation. The following description summarizes the Debtor's assets.

(a)    <u>Leased Real Property</u>

The Debtor leases no real property from a third party. The 490 Club Drive, Tahoe City, CA property is the subject of a ski season lease that will end on its own terms shortly. The 801 Wheelock, Franklin, Texas property is an apartment complex with 36 units, nearly all are currently leased to third parties. The 807 Wheelock, Franklin, Texas property is an apartment complex with 16 units, all are currently leased to third parties. Debtor uses Crossroads at Cedarwood LLC to manage the two Franklin Texas properties and the leasor for the residents of those properties is Crossroad at Cedarwood LLC.

(b) <u>Real Property.</u>  See Appendix 1 for a further description of the assets and a liquidations analysis.

(c) <u>Personal Property.</u>  The Debtor's personal property consists of the furnishings of her residence, several partnerships, and Limited Liability Companies ("LLC's)". Several of the partnerships and LLC's are inactive and have no value. However, one LLC, Texas Topaz, holds active mineral leases that generate approximately $6,500 per month in royalties. Debtor believes

that entity is worth $350,000. Other partnerships and LLC's hold real property that is owned in part with Debtor's brother-in-law, John Gewalt. The real property is largely undeveloped and likely will take several years to market. See Appendix 1 for a further description of the assets and a liquidations analysis.

      (d)    <u>Causes of Action</u>

    The Debtor may require the Court's jurisdiction to enforce the Settlement Agreement entered into with John Gewalt. Debtor is unaware of any other Causes of Action, including Avoidance Actions, which are described as follows:

      (1)    Preference Causes of Action

    Under the Bankruptcy Code, a debtor may recover certain preferential transfers of property, including cash, made while insolvent during the 90 days immediately prior to the filing of its bankruptcy petition with respect to pre-existing debts, to the extent the transferee received more than it would have in respect of the pre-existing debt had the debtor been liquidated under Chapter 7 of the Bankruptcy Code. In the case of "insiders," the Bankruptcy Code provides for a one-year preference period. There are certain defenses to such recoveries. Transfers made in the ordinary course of the debtor's and transferee's business according to the ordinary business terms in respect of debts less than 90 days before the filing of a bankruptcy are not recoverable. Additionally, if the transferee extended credit subsequent to the transfer (and prior to the commencement of the bankruptcy case), such extension of credit may constitute a defense to recovery, to the extent of any new value, against an otherwise recoverable transfer of property. If a transfer is recovered by the debtor, the transferee has an unsecured claim against the debtor to the extent of the recovery. Debtor does not believe that Preference Causes of Action will provide funding to contribute to distributions under this Plan.

    Although the Debtor and her estate reserve the right to prosecute preference, the Debtor will or will not pursue the Preference Causes of Action in the exercise of her business judgment and in consultation with her attorneys. The Debtor assigns minimal value to the Causes of Action (although she reserves all rights with respect thereto) because most of her pre-Petition Date

Subchapter V Plan of Reorganization          6

transfers were made in the ordinary course of business, were covered by the provision of subsequent new value, or were intended to be and were contemporaneous exchanges for new value.

(2)　　Fraudulent Transfer Causes of Action

Under the Bankruptcy Code and various state laws, a debtor may recover certain transfers of property, including the grant of a security interest in property, made while insolvent or which rendered the debtor insolvent. The Debtor is not aware of any such transfers. However, the Debtor and her estate reserve the right to pursue Fraudulent Transfer Causes of Action if facts come to light which show that such Causes of Action exist.

(3)　　Causes of Action Generally

The Debtor reserves her right to identify and bring Causes of Action based on preferences, fraudulent transfers, post-petition transfers, other Avoidance Actions, and any other actions. The Debtor has conducted a limited analysis of potential recoveries under Chapter 5 of the Bankruptcy Code. Any and all avoidance actions and rights pursuant to sections 542, 543, 544, 545, 547, 548, 549, 550, and 553 of the Bankruptcy Code and all causes of action under state, federal, or other applicable law shall be retained and may be prosecuted or settled by the Debtor.

Under the Plan, the Debtor's rights to object to all Claims and Interests asserted against the Estate and all of the Debtor's Causes of Action, shall vest in the Debtor after the Confirmation Date.

Unless a Cause of Action against any Person is expressly waived or released in the Plan or any Final Order of the Bankruptcy Court, the Debtor expressly reserves such Cause of Action for later adjudication (including, without limitation, Causes of Action not specifically identified or of which the Debtor may presently be unaware or which may arise or exist by reason of additional facts or circumstances unknown to the Debtor at this time or facts and circumstances that may change or be different from those that the Debtor now believes to exist) and, therefore, no preclusion doctrine, including without limitation, the doctrines of *res judicata*, collateral estoppel, issue preclusion, claims preclusion, waiver, estoppel (judicial, equitable, or otherwise), or laches shall apply to such Causes of Action upon or after the confirmation or consummation of the Plan based on the Disclosure Statement, the Plan, or the Confirmation Order, except where such Claims

or Causes of Action have been expressly released in the Plan or any other Final Order of the Bankruptcy Court.

## ARTICLE II
## DEFINITIONS

Capitalized words not otherwise defined in this Plan have the following meanings:

(1)    **Administrative Expense Claim** means any Claim arising from the administration of the Debtor's chapter 11 case as provided in section 503 of the Bankruptcy Code or that is entitled to priority under section 507(a)(1) of the Bankruptcy Code, including, without limitation,(a) fees and expenses of the Debtor's professionals Allowed pursuant to an Order of the Bankruptcy Court, and (b) all fees and charges assessed against the Debtor's estate pursuant to 28 U.S.C. § 1930.

(2)    **Allowed or Allowance** means with respect to Claims (a) any Claim (i) for which a Proof of Claim has been timely filed on or before the applicable Claims Bar Date or (ii) that is listed in the Debtor's Schedules as of the Effective Date as not disputed, not contingent, and not unliquidated whether or not a Proof of Claim has been timely filed; provided that, in each case, any such Claim shall be considered Allowed only if and to the extent that no objection to the allowance thereof has been filed by the Effective Date or such an objection has been withdrawn or the Claim has been thereafter Allowed by a final non-appealable order; or (b) any Claim Allowed pursuant to the Plan. Claims allowed solely for the purpose of voting to accept or reject the Plan pursuant to an order of the Bankruptcy Court shall not be considered "Allowed Claims" hereunder.

(3)    **Avoidance Action** means all avoidance, recovery, subordination or other actions or remedies that may be brought on behalf of the Debtor or its estate under the Bankruptcy Code or applicable non-bankruptcy law, including, without limitation, actions or remedies under sections 510, 542, 543, 544, 545, 547, 548,549, 550, 551, 553(b) and 724(a) of the Bankruptcy Code and other similar state law claims and causes of action.

(4)    **Bankruptcy Code** means title 11 of the United States Code as in effect on the Petition Date.

(5)    **Bankruptcy Court** means the United States Bankruptcy Court for the Eastern District of California, Sacramento Division.

(6)    **Causes of Action** means all claims, obligations, suits, judgments, damages, demands, debts, rights, causes of action and liabilities, arising on, prior to or after the Petition Date, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising in law, equity or otherwise, including Avoidance Actions, asserted, or which may be asserted, by or on behalf of the Debtor and/or the Debtor's estate, whether or not pending on the Effective Date or prosecuted thereafter against any person, based in law or equity, including, without limitation, under the Bankruptcy Code, whether direct, indirect, derivative or otherwise and whether asserted or unasserted as of the Confirmation Date.

(7)    **Claim** has the meaning set forth in section 101(5) of the Bankruptcy Code.

(8) **Claims Bar Date** means (a) August 23, 2021 for a Proof of Claim filed by a government unit; (b) 10 days after the entry of the Confirmation Order all Administrative Expense Claims (with the exception of Reynolds Law Corporation); (c) 10 days after the entry of the Confirmation Order for all Claims arising from the rejection of executory contracts rejected pursuant to the Plan; and (d) May 3, 2021 for a Proof of Claim for all other Claims.

(9) **Confirmation Date** means the date that the Confirmation Order becomes a final, non-appealable order and on which no stay of the Confirmation Order is in effect.

(10) **Confirmation Order** means the order entered by the Bankruptcy Court confirming the Plan.

(11) **Debtor** means the chapter 11 debtor in this case, Victoria M. Gewalt, both before and after the Effective Date.

(12) **Disallowed** means a Claim for which either (a) the Bankruptcy Court has entered a final non-appealable order that such Claim is disallowed or (b) any Claim for which a Proof of Claim was not filed by the applicable Claims Bar Date.

(13) **Disputed** means a Claim for which a Proof of Claim was filed prior to the applicable Claims Bar Date that has not been Allowed or Disallowed by a final non-appealable order and as to which the Debtor or another party in interest has filed an objection prior to the Effective Date.

(14) **Effective Date** means the first business day 14 days after the Confirmation Date.

(15) **Equity Interest** means the rights of Victoria Gewalt.

(16) **General Unsecured Claim** means any Claim that is not an Administrative Expense Claim, Priority Claim, Secured Claim, that is not given priority under section 507(a) of the Bankruptcy Code or otherwise or subject to subordination under section 510 of the Bankruptcy Code.

(17) **Petition Date** means February 22, 2021.

(18) **Priority Claim** means a Claim that is entitled to priority in payment under section 507(a) of the Bankruptcy Code that is not an Administrative Expense Claim or a Priority Tax Claim.

(19) **Priority Tax Claim** means a Claim that is entitled to priority in payment under section 507(a)(8) of the Bankruptcy Code; provided, however, that any Claim on account of any penalty arising with respect to or in connection with a Priority Tax Claim that does not compensate the Holder for actual pecuniary loss shall be treated as a General Unsecured Claim.

(20) **Projected Disposable Income** means the income received by the Debtor that is not reasonably necessary to be expended for the payment of expenditures necessary for the continuation, preservation, or operation of the business of the Debtor.

(21) **Proof of Claim** means a proof of claim filed with the Bankruptcy Court.

(22) **Secured** or **Secured Claim** means a Claim that is secured by a lien on property in which the Debtor has an interest or that is subject to a valid right of setoff under section 553 of the Bankruptcy Code, to the extent of the value of the Claim holder's

interest in such Debtor's interest in such property or to the extent of the amount subject to such valid right of setoff, as applicable, as determined under section 506 of the Bankruptcy Code.

(23)    **Unsecured** means a Claim against the Debtor that is not Secured.

## ARTICLE III
## CLASSIFICATION OF CLAIMS AND INTERESTS

Section 3.01    **Class 1. First Guaranty Bank. Secured Claim**

Class 1 consists of the Secured Claim of First Guaranty Bank. This claim is secured by a first priority Deed of Trust secured by 801 Wheelock, Franklin, Texas.

Section 3.02    **Class 2. Gulamali Faizullah. Secured Claim**

Class 2 consists of the Secured Claim of Gulamali Faizullah. Mr. Faizullah is secured by second priority deeds of trust in 807 Wheelock, Franklin, Texas and 490 Club Drive, Tahoe City, California.

Section 3.03    **Class 3. Gulamali Faizullah. Secured Claim**

Class 3 consists of the Secured Claim of Gulamali Faizullah. Mr. Faizullah is secured by second priority deeds of trust in 801 and 807 Wheelock, Franklin, Texas. This is a separate obligation from the obligation secured by 807 Wheelock and 490 Club Drive, Tahoe City, California.

Section 3.04    **Class 4. Mechanics Bank, N.A. Secured Claim**

Class 4 consists of the secured claim of Mechanics Bank N.A. This claim is secured by a First Priority Deed of Trust recorded against Debtor's residence, 9649 Sterling Pointe Court, Loomis, CA. The residence is scheduled with a value of $1,800,000 and the Class 4 claim is approximately $1,308,900.

Section 3.05    **Class 5. Superior Loan Servicing Secured Claim**

This claim is secured by First Priority Deed of Trust recorded against 490 Club Drive, Tahoe City, CA.

Section 3.06    **Class 6. Safy Khalifa.**

This claim is secured by a Second Priority Deed of Trust recorded against Debtor's residence, 9649 Sterling Pointe Court, Loomis, CA.

Section 3.07    **Class 7. Santander Consumer USA**

This claim is secured by Debtor's personal vehicle, a 2020 Lincoln Corsair.

Section 3.08    **Class 8. General Unsecured Creditors**

All unsecured claims owed as of February 22, 2021.

Section 3.09  **Class 9.  Victoria Gewalt**

The interest of the Debtor, an individual, Victoria Gewalt.

**TREATMENT OF ADMINISTRATIVE EXPENSE CLAIMS AND PRIORITY TAX CLAIMS**

Section 3.10  **Unclassified Claims**

Consistent with section 1123(a)(1) of the Bankruptcy Code, administrative expense claims, and priority tax claims are not classified in this Plan.

Section 3.11  **Administrative Expense Claims**

Each holder of an Allowed administrative expense claim under section 503 of the Bankruptcy Code will be paid in full in cash on the Effective Date or upon such other terms as may be agreed upon by the holder of the claim and the Debtor.

Section 3.12  **Priority Tax Claims**

Each holder of a Priority Tax Claim will be paid in four equal quarterly payments of $427.00 commencing at the end of the first calendar quarter after the Effective Date.  The California Franchise Tax Board has filed a prority tax proof of claim in the amount of $1,708. Historically, Debtor has used a payroll service minimizing the risk of unpaid priority tax obligations.

**ARTICLE IV**
**TREATMENT OF CLAIMS AND INTERESTS UNDER THE PLAN**

Claims and interests will be treated as follows under this Plan:

Section 4.01    **Class 1. First Guaranty Bank.  Secured by 801 Wheelock, Franklin, Texas.**

(a)    Treatment

First Guaranty Bank is secured by a first priority lien secured by 801 Wheelock, Franklin, Texas.

(b)    Impairment

Class 1 is impaired.

(c)    Voting

Because Class 1 is impaired, it will be entitled to vote on the Plan.

Section 4.02    **Class 2.  Gulamali Faizullah.  Secured by 2nd DOT on 490 Club Drive, Tahoe City, California.**

(a)    <u>Treatment</u>

Paid in full from sale of 490 Club Drive, Tahoe City, California.

(b)    <u>Impairment</u>

Class 2 is unimpaired and has been paid..

(c)    <u>Voting</u>

Because Class 2 is unimpaired, it wil not be entitled to vote on the Plan.

Section 4.03    **Class 3. Gulamali Faizullah.  Secured by 2nd DOT on 801 and 807 Wheelock, Franklin, Texas.**

(a)    <u>Treatment</u>

Paid in full from sale of 807 Wheelock, Franklin, Texas.

(b)    <u>Impairment</u>

Class 3 is impaired.

(c)    <u>Voting</u>

Because Class 3 is impaired, it will be entitled to vote on the Plan.

Section 4.04    **Class 4. Mechanics Bank, N.A. Secured by 1st DOT on 9649 Sterling Pointe Court, Loomis, California.**

(a)    <u>Treatment</u>

To be paid from proceeds from the sale of other assets as well as a reverse mortgage refinance within two years of Plan confirmation.

(b)    <u>Impairment</u>

Class 4 is impaired.

(c)    <u>Voting</u>

Because Class 4 is impaired, it will be entitled to vote on the Plan.

Section 4.05    **Class 5.  Superior Loan Servicing secured by 490 Club Drive, Tahoe City, California.**

(a)      Treatment

Paid in full from sale of 490 Club Drive, Tahoe City, California.

(a)      Impairment

Class 5 is unimpaired and has been paid.

(b)      Voting

Because Class 5 is unimpaired, it wil not be entitled to vote on the Plan.

Section 4.06    **Class 6.  Safy Khalifa secured by 2nd DOT on 9649 Sterling Pointe Court, Loomis, California.**

(a)      Treatment

To be paid from proceeds from the sale of other assets as well as a reverse mortgage refinance within two years of Plan confirmation.

(b)      Impairment

Class 6 is impaired.

(c)      Voting

Because Class 6 is impaired, it will be entitled to vote on the Plan.

Section 4.07    **Class 7. General Unsecured Creditors.**

(a)      Treatment

To be paid in full from proceeds from the sale of other assets as well as a reverse mortgage refinance within two years of Plan confirmation.

(d)      Impairment

Class 7 is impaired.

(e)      Voting

Because Class 7 is impaired, it will be entitled to vote on the Plan.

**ARTICLE V**
**DISPUTED CLAIMS**

Section 5.01    **Preservation of Debtor's Rights**

After the Effective Date, the Debtor shall have and retain all rights and defenses the Debtor had with respect to any Claim immediately prior to the Effective Date except with respect to any Claim deemed Allowed under the Plan.  All resolved Claims Allowed prior to the Effective Date under a final non-appealable order of the Bankruptcy Court under Bankruptcy Rule 9019 or otherwise shall be binding on all parties.

### Section 5.02    Amendments to Claims/Late Claims

After the Confirmation Date, a Claim may not be filed or amended without the authorization of the Bankruptcy Court and, even with such Bankruptcy Court authorization, may be amended by the holder of such Claim solely to decrease, but not to increase, the face amount thereof. Except as otherwise provided in this Section, any new or amended Claim filed after the Confirmation Date shall be deemed Disallowed in full and expunged without any action by the Debtor, and the Debtor will make no distribution on account thereof.

### Section 5.03    Objections to Claims

An objection to the Allowance of a Claim shall be in writing and must be filed by a party in interest or the Debtor on or before the Effective Date or the deadline to file claims, whichever is later. Any objection made by any party in interest who is not the Debtor will be done at that party's own expense. The Debtor will prosecute any objection brought by the Debtor until determined by a final non-appealable order unless the Debtor (a) compromises and settles such objection to a Claim or (b) withdraws such objection.

### Section 5.04    Delay of Distribution on Disputed Claims

No distribution will be made on account of any Disputed Claim unless and until such Claim is Allowed.

### Section 5.05    Settlement of Disputed Claims

The Debtor will have the power and authority to settle and compromise any Disputed Claim subject to Bankruptcy Court approval under Rule 9019 of the Federal Rules of Bankruptcy Procedure. For administrative convenience, the Debtor will have authority to settle any Disputed Claim in an Allowed Claim of less than $15,000.00 without approval of the Bankruptcy Court.

### Section 5.06    Claims Estimation

The Debtor may at any time request that the Bankruptcy Court estimate any Claim under section 502(c) of the Bankruptcy Code for any reason, regardless of whether any party previously has objected to such Claim or whether the Bankruptcy Court has ruled on any such objection.

The Bankruptcy Court shall retain jurisdiction to estimate any such Claim, including during the litigation of any objection to any Claim or during the appeal relating to such objection. In the event that the Bankruptcy Court estimates any such Claim, that estimated amount shall constitute a maximum limitation on such Claim for all purposes under the Plan (including for purposes of distributions), and the Debtor may elect to pursue any supplemental proceedings to object to any ultimate distribution on such Claim.

## ARTICLE VI
## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

### Section 6.01    Assumed Executory Contracts and Unexpired Leases

Except as otherwise set forth herein, as of the Effective Date, all Executory Contracts of the Debtor shall be deemed rejected unless such contract (a) was previously assumed or rejected by the Debtor; (b) previously expired or was terminated pursuant to its terms or applicable law; (c) is the subject of a motion to assume or reject filed by the Debtor under section 365 of the Bankruptcy Code pending as of the Effective Date; or (d) is specifically designated on the following table of executory contracts to be assumed. The proposed cure amount for an Executory Contract or unexpired lease that is assumed pursuant to the Plan shall be zero dollars unless otherwise indicated in the following schedule. The Debtor assumes only the following executory

contracts or unexpired leases effective on the Effective Date of this Plan, with the following cure amounts payable on the Effective Date of this Plan:

| Name of Party | Executory Contract or Unexpired Lease | Cure Amount |
|---|---|---|
| None | None | None |

**ANY HOLDER OBJECTING TO THE ABOVE CURE AMOUNTS OR ASSUMPTION OF SUCH EXECUTORY CONTRACT OR UNEXPIRED LEASE MUST FILE AN OBJECTION IN THE BANKRUPTCY COURT AND SERVE IT ON THE DEBTOR PRIOR TO THE ENTRY OF THE CONFIRMATION ORDER.**

Any counterparty to the above executory contracts or unexpired leases who fails to file an objection to the proposed cure amounts or assumption prior to the entry of the Confirmation Order will be deemed to have accepted such cure amount in full satisfaction and cure of all defaults and other amounts due through and including the Effective Date, and will have no further claim against the Debtor therefore; further, such counterparties are deemed to accept the assumption of their executory contract or unexpired lease by the Debtor and will hereby waive all rights and defenses to assumption, adequate assurance of future performance, or otherwise.

Section 6.02    **Rejected Executory Contracts and Unexpired Leases**

The Debtor will be conclusively deemed to have rejected all executory contracts and unexpired leases not expressly assumed under Section 6.01 above upon entry of the Confirmation Order. A proof of a claim arising from the rejection of an executory contract or unexpired lease under this section must be filed no later than 10 days after the entry of the Confirmation Order.

Section 6.03    **Continuation of Insurance Policy Coverage**

From and after the Effective Date, each of the Debtors' insurance policies in existence as of the Effective Date shall be reinstated and continued in accordance with their terms and, to the extent applicable, shall be deemed assumed by the Debtor pursuant to section 365 of the Bankruptcy Code. Nothing in the Plan shall affect, impair or prejudice the rights of the insurance carriers or the Debtor under the insurance policies in any manner, and such insurance carriers and Debtor shall retain all rights and defenses under such insurance policies, and such insurance policies shall apply to, and be enforceable by and against, the Debtor in the same manner and according to the same terms and practices applicable to the Debtor, as existed prior to the Effective Date.

**ARTICLE VII**
**MEANS FOR IMPLEMENTATION OF THE PLAN**

Section 7.01    **Re-vesting of Property of the Estate**

On the Effective Date, all assets of the Debtor's estate, including all real and personal property, all Causes of Action, interests, claims, choses in action, and rights under any contracts (executory or otherwise), against any person will re-vest and be transferred to the post-Effective Date Debtor.

Section 7.02    **Retention and Re-vesting of Causes of Action**

The Debtor will retain (or hereby be given) standing and authority to prosecute all Causes of Action. The Debtor hereby expressly reserves and will retain or be re-vested with all of Causes of Action, and, therefore, in each case, no preclusion doctrine, including the doctrines of *res judicata*, collateral estoppel, issue preclusion, claim preclusion, waiver, estoppels (judicial,

equitable, or otherwise), or laches shall apply to such Causes of Action upon or after the entry of the Confirmation Order or Effective Date based on the Plan or the Confirmation Order, except where such Causes of Action have been expressly released in the Plan or any final non-appealable order. In accordance with section 1123(b) of the Bankruptcy Code, the Debtor may enforce all rights to commence and pursue any and all of the Causes of Action, and the Debtor's rights to commence, prosecute, or settle any such Causes of Action shall be preserved, notwithstanding entry of the Confirmation Order or the occurrence of the Effective Date. No person may rely on the absence of a specific reference in the Plan or the Disclosure Statement to any Cause of Action against it as any indication that the Debtor will not pursue any and all available Causes of Action against it. In accordance with section 1123(b)(3) of the Bankruptcy Code, any Causes of Action that the Debtor may hold against any person shall vest in the Debtor. The Debtor may bring all such Causes of Action in the Bankruptcy Court or such other court of competent jurisdiction in its sole discretion. The Debtor will have and is hereby given authority to settle all Causes of Action without prior approval of the Bankruptcy Court.

### Section 7.03   Ability to Pay Claims under the Plan and Reorganization Efforts

The Debtor anticipates payment of the claims as proposed herein from the sale of real property and potential refinancing of her primary residence.

The Debtor will provide additional evidence supporting her wherewithal to fulfil her obligations under this Plan at the Hearing on Confirmation.

### Section 7.04   Post-Effective Date Management and Professionals

In accordance with section 1129(a)(5) of the Bankruptcy Code, from and after the Effective Date, Debtor shall continue to manage her affairs.

The Debtor may retain Stephen M. Reynolds and Reynolds Law Corporation as counsel after the Confirmation Date to assist the Debtor in any bankruptcy-related matters and such other matters as are appropriate. Reynolds Law Corporation will continue to charge its customary rates as agreed upon from time to time by the Debtor and Reynolds Law Corporation but will not be required to submit fee applications or otherwise be employed under the Bankruptcy Code, and the Debtor may pay Reynolds Law Corporation without notice, a hearing, or approval by the Bankruptcy Court.

After the Confirmation Date, the Debtor will hire, fire, retain, or employ such other professionals as it deems advisable in the reasonable exercise of its business judgment without the need to seek approval of the Bankruptcy Court. The Debtor will compensate her professionals for any services provided after the Confirmation Date in the ordinary course of her business without the need for Bankruptcy Court approval.

### Section 7.05   Continuation of Quarterly Reports

Following the Effective Date, the Debtor shall continue to provide quarterly distribution reports for each quarter (including any fraction thereof) until the Chapter 11 Case is converted, dismissed or closed, whichever occurs first.

### ARTICLE VIII
### MISCELLANEOUS AND GENERAL PROVISIONS

### Section 8.01   Definitions and Rules of Construction.

Except as otherwise provided in this Plan, the definitions and rules of construction set forth in sections 101 and 102 of the Bankruptcy Code apply when terms defined or construed in the Bankruptcy Code are used in this Plan.

### Section 8.02    **Severability**

If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

### Section 8.03    **Binding Effect**

The rights, obligations, limitations, and injunctions of, for, or against any person or entity named or referred to in this Plan will be binding upon and will inure to the benefit of the successors or assigns of such entity.

### Section 8.04    **Controlling Law**

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code or the Federal Rules of Bankruptcy Procedure), the laws of the State of California govern this Plan and any agreements, documents, and instruments executed in connection with this Plan.

### Section 8.05    **Retention of Bankruptcy Court Jurisdiction**

The Bankruptcy Court will retain and have exclusive jurisdiction over any matter arising under the Bankruptcy Code arising in or related to the Debtor's chapter 11 case or the Plan, or that relates to any of the following:

(1)      consistent with Article VI, hereof, to resolve any matter related to the assumption or rejection of any executory contract or unexpired lease to which a Debtor is a party or with respect to which a Debtor may be liable and to hear and determine any Claim arising therefrom;

(2)      to enter such orders as may be necessary or appropriate to implement or consummate the provisions of the Plan;

(3)      to determine all motions, adversary proceedings, applications, and contested or litigated matters that may be pending on the Effective Date or that, pursuant to the Plan, may be instituted by the Debtor prior to or after the Effective Date, including resolution of all Causes of Action, including Avoidance Actions;

(4)      to ensure that distributions to holders of Allowed Claims are accomplished as provided in the Plan;

(5)      to hear and determine any timely objection to a Claim or Proof of Claim;

(6)      to enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified, reversed, or vacated;

(7)      to issue such orders in aid of execution of the Plan, to the extent authorized by section 1142 of the Bankruptcy Code;

(8)      to consider any modification of the Plan, to cure any defect or omission, or reconcile any inconsistency in any order of the Bankruptcy Court, including the Confirmation Order;

(9)      to hear and determine all applications for awards of compensation for services rendered and reimbursement of expenses incurred by the Debtor's professionals;

(10)      to hear and determine disputes arising in connection with or relating to the Plan, or the interpretation, implementation, or enforcement of the Plan, or the extent of any

Entity's obligations incurred in connection with or released under the Plan, unless such agreements or documents contain express enforcement or dispute resolution provisions to the contrary, in which case such provisions should govern;

(11)    to issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any Entity with consummation or enforcement of the Plan or the Global Settlement Agreement;

(12)    to determine any other matter that may arise in connection with or that is related to the Plan, the Disclosure Statement, the Supplemental Disclosure Statement, the Confirmation Order, the Global Settlement Agreement, or any contract, instrument, release, or other agreement or document created in connection therewith, unless such agreements or documents contain express enforcement or dispute resolution provisions, in which case, such provisions should govern;

(13)    to hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code (including, without limitation, any matter relating to tax refunds, and any request by the Debtor for an expedited determination of tax liability under section 505(b) of the Bankruptcy Code with respect to the Debtors, the Liquidating Trust, or the Liquidating Trust Claims Reserve, as applicable);

(14)    to hear any other matter or for any purpose specified in the Confirmation Order that is not inconsistent with the Bankruptcy Code; and

(15)    to enter a final decree closing the Chapter 11 Cases.

Section 8.06    **Retention, Employment, and Compensation of Debtor's Professionals Post-Confirmation**

On and after the date the Confirmation Order is entered, the Debtor may, in the ordinary course of business and without further notice to or action, order, or approval of the Bankruptcy Court, employ and retain such professionals (including attorneys, accountants, financial advisors, and other professionals and including Debtor's professionals employed during the chapter 11 case) as she in her reasonable business judgment deems appropriate and pay such in cash the reasonable and documented fees and expenses of the professionals or other fees and expenses incurred by the Debtor, for all fees and expenses incurred after the entry of the Confirmation Order including fees and expenses related to implementation and consummation of the Plan and all fees of the U.S. Trustee. From and after the date the Confirmation Order is entered, any requirement that professionals comply with sections 327 through 331 and 1103 of the Bankruptcy Code or any order of the Bankruptcy Court entered before the date the Confirmation Order is entered governing the retention of, or compensation for services rendered by, professionals after the date the Confirmation Order is entered shall terminate, and the Debtor may employ or pay any professional in the ordinary course of business without any further notice to or action, order, or approval of the Bankruptcy Court.

Section 8.07    **Inconsistencies**

In the event of any inconsistency among the Plan, the Disclosure Statement, or any exhibit or schedule to the Disclosure Statement, the provisions of the Plan shall govern. In the event of any inconsistencies among the Plan and the Confirmation Order, the Confirmation Order shall control.

Section 8.08    **Subchapter V Trustee**

Section 1183(c) (1) and (2) of the Bankruptcy Code contemplates the termination of the Subchapter V Trustee upon substantial consummation. The service of the Subchapter V Trustee shall be terminated regardless of whether the Trustee's final fees have been approved or paid. The services of the Subchapter V Trustee may be continued postconfirmation by the Court for cause shown without modification of this Plan. The Subchapter V Trustee may be employed as Plan Administrator after Plan confirmation.

Section 8.09    **Substantial Consummation**

Substantial consummation shall be considered to have occurred upon the first payments to creditors after plan confirmation pursuant to this Plan and service of the Notice of Substantial Consummation as contemplated by 11 U.S.C. 1183(c)(2).

Section 8.10    **Unclaimed Distributions**

Any property to be distributed pursuant to the Plan, if not claimed by the distributee within one (1) year after the payment, shall be returned to the Debtor and become the property of the Debtor free and clear of any claims of any person.

Section 8.11    **Post-Confirmation Default and Cure**

In the event the Debtor becomes delinquent in duty or obligation under the Plan, the affected creditor shall provide written notice of such default to the Debtor and her counsel. The Debtor shall thereafter have fifteen (15) business days from receipt of said notice in which to cure the default and, if so cured, will not be considered a default. In the event such default remains uncured, the affected creditor or creditors shall be entitled to take such action as is appropriate. The Debtor or such creditor shall have the right to bring the issue of default before the Bankruptcy Court. At any hearing, the Bankruptcy Court may consider the reason for the default and the ability of the Debtor to cure the default in a reasonable period of time. The Bankruptcy Court may also consider conversion of the case to a Chapter 7 of the Bankruptcy Code or dismissal if the same is in the best interest of creditors.

## ARTICLE IX
## DISCHARGE AND RELATED MATTERS

Section 9.01    **Discharge of Claims**

Upon completion of payments contemplated by this Plan, Debtor shall be discharged from any debt that arose before confirmation of the Plan, to the extent specified in U.S.C. § 1192.

If the Plan is confirmed pursuant to 11 U.S.C. § 1191(a), the Debtor will be discharged from any debt that arose before confirmation of the Plan. If this plan is confirmed pursuant to 11 U.S.C. § 1191(b) Debtor shall be discharged from any debt that arose before confirmation of the Plan, upon completion of payments under the Debtor shall be discharged from any debt that arose before confirmation of the Plan.

Section 9.02    **Exculpation**

Debtor nor any of her respective members, officers, directors, employees, representatives, professionals, or agents, will have or incur any liability to any Creditor for any act or omission in connection with or arising out of the Chapter 11 Case, including, without limitation, prosecuting confirmation of this Plan, consummation of this Plan, or the administration of this Plan or the property to be distributed under this Plan, except for gross negligence, willful misconduct, or fraud.

## ARTICLE X
## MODIFICATION OF PLAN

### Section 10.01  Modification of Plan

Subject to the restrictions on modifications set forth in section 1193 of the Bankruptcy Code, the Debtor reserves the right to alter, amend or modify the Plan before its substantial consummation. Prior to the Effective Date, the Debtor may make appropriate technical adjustments and modifications to the Plan without further order or approval of the Bankruptcy Court. Holders of Claims that have accepted the Plan shall be deemed to have accepted the Plan, as amended, modified, or supplemented, if the proposed amendment, modification, or supplement does not materially and adversely change the treatment of the Claim of such holder; provided, however, that any holders of Claims who were deemed to accept the Plan because such Claims were unimpaired shall continue to be deemed to accept the Plan only if, after giving effect to such amendment, modification, or supplement, the treatment of such Claims continues to be unimpaired.

## ARTICLE XI
## CONFIRMATION OF PLAN

The Debtor respectfully requests Confirmation of the Plan under section 1191(a) of the Bankruptcy Code. In the event that any impaired class of Claims (or class of Claims that the Court determines is impaired) shall fail to accept, or be deemed to reject, the Plan in accordance with section 1191(a) of the Bankruptcy Code, the Debtor reserves the right to (i) request that the Bankruptcy Court confirm the Plan in accordance with section 1191(b) of the Bankruptcy Code and/or (ii) amend the Plan, including amendment at the Confirmation Hearing. The Debtor respectfully requests Confirmation of the Plan under section 1191(b) of the Bankruptcy Code in such event.

Respectfully submitted,

Dated: April 19, 2021.

By:    Victoria M. Gewalt

Dated: April 12, 2021.

REYNOLDS LAW CORPORATION

/s/ Stephen M. Reynolds

By:    STEPHEN M. REYNOLDS
Attorneys for Victoria M. Gewalt

Subchapter V Plan of Reorganization

20

# APPENDIX 1

## ASSET DESCRIPTION AND LIQUIDATION ANALYSIS

**Values**

| | | |
|---|---|---|
| Cash at filing | $ | 1,500 |
| | | |
| **9649 Sterling Pointe Road, residence** | $ | 1,800,000 |
| Mechanics Bank | $ | 1,368,280 |
| Safy Khalifa | $ | 100,000 |
| Homestead Exemption | $ | 537,500 |
| Net Equity | $ | 0 |
| | | |
| **490 Club Drive, Tahoe City, California, rental/listed for sale** | $ | 826,000.00 |
| Pacific Funding Solutions/Superior Loan Servicing 1st DOT | $ | 459,994.67 |
| Gulamali Faizullah 2nd DOT | $ | 236,894.21 |
| Abstract of Judgment Kristy Hernandez | $ | 5,000.00 |
| Property Taxes, Transfer Fees | $ | 10,723.01 |
| Costs of Sale, Commisions, Title Fees | $ | 42,395.13 |
| Net Equity | $ | 70,992.98³ |
| | | |
| **512-3-8 Tangipahoa LA  (in escrow, title issues being resolved)** | $ | 120,000 |
| Net Equity | $ | 120,000 |
| | | |
| **801 Wheelock Franklin TX (36 units)** | $ | 2,000,000 |
| First Guaranty Bank | $ | 603,791 |
| Tax Ease (property taxes, cross collateralized) | $ | 167,583 |
| Gulamali Faizullah 2nd DOT Class 3 claim, cross collateralized | $ | 110,000 |

---

³ Estimated, based on Estimated Seller's Statement.

| | | |
|---|---|---|
| Cost of Sale (6%) | $ | 120,000 |
| Net Equity | $ | **1,276,209** |

| | | |
|---|---|---|
| **807 Wheelock, Franklin TX (16 units, offer pending)** | $ | 850,000 |
| Gulamali Faizullah 2nd DOT Class 3 claim, cross collateralized | $ | 0 |
| Pacific Funding Solutions/Superior Loan Servicing 1st DOT | $ | 391,000 |
| Tax Ease (property taxes) | $ | 0 |
| Gloria Jean Bowman 3rd DOT | $ | 53,650 |
| Cost of Sale (6%) | $ | 51,000 |
| Net Equity (assumes Tax Ease and Faizullah paid from 801 Wheelock) | $ | **354,350** |

| | | |
|---|---|---|
| **4403 Carter Creek, No. 6 (condo listed for sale)** | $ | 74,900 |
| Cost of Sale (8%) | $ | 5,992 |
| Net Equity | $ | **68,908** |

| | | |
|---|---|---|
| **Grand Total Net Equity in Real Property** | $ | **1,890,460** |

**Personal Property Assets**

| | | |
|---|---|---|
| Cash at filing | $ | 1,500 |
| Interests in inactive LLC's and partnerships (Porcupine ID, LLC, Buckaroo Management LLC, Lobolly Group LP, CD&G Limited Partnership, LSP Minerals[4] | $ | 0 |
| Texas Topaz, LLC | $ | 350,000 |

**Liquidation Values**

---

[4] Inactive LLC's have no assets. Partnership interests are illiquid and owned in part by John H. Grenwalt. Despite court enforced settlement agreements liquidation is likely to take some years. In addition, partnership assets are primarily undeveloped real estate in Louisiana and Texas with long sales times. In a Chapter 7 liqidation a Chapter 7 Trustee would likely abandon if other assets paid claims in full prior to liquidation.

The values listed above are estimated liquidation values. The value of 490 Club Drive is the actual sales price.

**Grand Total**           S     **2,241,960**

**Assumptions/Discussion**

This is a liquidation analysis. In a liquidation the values realized may be greater or lesser than the values estimated by the Debtor. The amount of the Secured Claims increases daily as interest accrues.

1

2                                    APPENDIX 2

3                           STATEMENT OF DISTRIBUTIONS

4    Debtor is in the process of marketing all of the real estate owned by the Debtor with the
     exception of 9649 Sterling Pointe Road, Loomis, CA which is Debtor's residence. The secured
5    claims against each property will be satisfied at the time of sale. Cross collateralized claims will
     be paid from the first property sold.
6

7    Real properties are listed in the order Debtor anticipates sale. The 490 Club Drive property has
     been sold with a net received of approximately $70,992.98.
8

9    **490 Club Drive, Tahoe City, California, sale set for March 24, 2021**    $    826,000

10   Pacific Funding Solutions/Superior Loan Servicing 1st DOT                   $    91,000

11   Gulamali Faizullah 2nd DOT                                                  $    205,000

12   Estimated Costs of Sale (8%)                                               $     64,000

13   Estimated Capital Gains Tax                                                 $

14   Net Equity                                                                  $    **140,000**

15

16   **4403 Carter Creek, No. 6 (condo listed for sale)**                       $    74,900

17   Cost of Sale (8%)                                                           $      5,992

18   Estimated Capital Gain Tax                                                  $

19   Net Equity                                                                  $    **68,908**

20

21   **801 Wheelock Franklin TX (36 units)**                                    $    2,000,000

22   First Guaranty Bank                                                         $    603,791

23   Tax Ease (property taxes, cross collateralized)                            $    167,583

24   Gulamali Faizullah 2nd DOT[5]                                              $    0

25   Cost of Sale (6%)                                                          $     120,000

26   Estimated Capital Gain Tax                                                 $

27

28   _____

     [5] Anticipate payment from sale of 490 Club Drive

| | | |
|---|---|---|
| Net Equity | $ | **1,276,209** |
| | | |
| **807 Wheelock, Franklin TX (16 units, offer pending)** | $ | 850,000 |
| Gulamali Faizullah 2nd DOT (see Foot Note 2) | $ | |
| Pacific Funding Solutions/Superior Loan Servicing 1st DOT | $ | 522,850 |
| Tax Ease (property taxes)[6] | $ | |
| Gloria Jean Bowman 3rd DOT | $ | 53,650 |
| Cost of Sale (6%) | $ | 51,000 |
| Estimated Capital Gain Tax | | |
| Net Equity | $ | **222,500** |
| | | |
| **512-3-8 Tangipahoa LA  (in escrow, title issues being resolved)** [7] | $ | 160,000 |
| Net Equity | $ | **160,000** |
| | | |
| **9649 Sterling Pointe Road, residence** | $ | 1,800,000 |
| Mechanics Bank | $ | 1,368,280 |
| Safy Khalifa | $ | 100,000 |
| Homestead Exemption | $ | 537,500 |
| Net Equity | $ | **0** |
| | | |
| **Grand Total Anticipated Net Equity in Real Property** | $ | **1,867,617** |

**Personal Property Assets** Sales of non-exempt personal property assets are not contemplated during the plan term.

| | | |
|---|---|---|
| Cash at filing | $ | 1,500 |

---

[6] Anticipate payment from sale of 801 Wheelock

[7] Sale efforts are ongoing but title issues may require an extended sale/closing period.

| | | |
|---|---|---|
| Interests in inactive LLC's and partnerships (Porcupine ID, LLC, Buckaroo Management LLC, Lobolly Group LP, CD&G Limited Partnership, LSP Minerals[8] | $ | 0 |
| Texas Topaz, LLC | $ | 350,000 |

**Estimated Payments on Claims through proposed sales.**

| | | |
|---|---|---|
| Pacific Funding Solutions/Superior Loan Servicing 1st DOT | $ | 522,850 |
| Gulamali Faizullah 2nd DOT | $ | 205,000 |
| First Guaranty Bank | $ | 603,791 |
| Tax Ease (property taxes, cross collateralized) | $ | 167,583 |
| Pacific Funding Solutions/Superior Loan Servicing 1st DOT | $ | 391,000 |
| Gloria Jean Bowman 3rd DOT | $ | 53,650 |
| Estimated Costs of Sale | $ | 240,992 |
| Total | $ | **2,053,016** |

| | | |
|---|---|---|
| Estimated Net Equity | $ | **1,867,617** |
| Estimated Distributions per Plan | $ | 2,053,016 |
| Estimated Professional Fees (attorney & accountant) | $ | 75,000 |
| Payments to General Unsecured Claims | $ | 245,121 |
| Payments to Creditors secured by 9649 Sterling Pointe Road, residence | $ | 1,468,280 |

---

[8] Inactive LLC's have no assets. Partnership interests are illiquid and owned in part by John H. Grenwalt. Despite court enforced settlement agreements liquidation is likely to take some years. In addition, partnership assets are primarily undeveloped real estate in Louisiana and Texas with long sales times. In a Chapter 7 liqidation a Chapter 7 Trustee would likely abandon if other assets paid claims in full prior to liquidation.